The defendant, Jane Doe, appeals from a judgment permanently enjoining distribution of her novel portraying the murder of the natural mother of plaintiff John Roe's adoptive children. We reverse and remand.
 I. Facts
In 1984, the natural mother of Roe's adoptive children was murdered by their natural father. The man dismembered his wife's body and buried it under a fish pond in the back yard of the family's home. When her body was discovered approximately three *Page 827 
years later, the event and the resulting trial received much publicity. The children's natural father was convicted and is now serving a life sentence in the penitentiary.
After the children's natural father was arrested for the murder of their mother, they remained in the custody of relatives for more than a year. Later, they were adopted by John Roe and his wife, who lived in another area of the state. The children moved to the home of their adoptive parents about a month before the trial of their natural father, and since that time they have been undergoing counseling to enable them to lead normal lives.
Doe wrote a novel based upon the events of the murder. She contacted various commercial publishers, but none was interested in publishing her book. She then invested her own money in publishing the book. She had approximately 1,000 copies printed in hopes that she could distribute the book herself. Roe learned of Doe's plan to distribute this book. As next friend of his minor adoptive children, Roe filed a complaint for an injunction against the distribution of the book.
The trial court entered a temporary restraining order, finding that the minor children were "likely to suffer an unlawful invasion of their privacy and mental solitude with resulting irreparable mental and emotional injuries" if the novel was distributed. On September 18, 1992, the trial court, after a hearing, entered a preliminary injunction. Although the parties had agreed that the September 18 hearing would constitute a final hearing, Doe, who was proceeding pro se, was given two weeks to secure counsel. Doe took no further action within the time allowed, and the court permanently enjoined the distribution of the book.
Doe subsequently obtained counsel. Her counsel filed a motion to set aside the order, but it was denied by operation of law. Thus, Doe appeals.
 II. Issue: Constitutionality of Prior Restraint
Although Doe raises several issues on appeal, the dispositive question is whether the injunction violated Article I, § 4, of the Constitution of the State of Alabama. According to Article I, § 4, "no law shall ever be passed to curtail or restrain the liberty of speech or of the press; and any person may speak, write, and publish his sentiments on all subjects, being responsible for the abuse of that liberty." The trial court held that a prior restraint was necessary because, it felt, the distribution of the book would injure the children by invading their right to privacy. We do not agree that Doe's right to freedom of speech as guaranteed by the constitution is overcome by the privacy interests raised in this case.
 III. Invasion of Right to Privacy
In Phillips v. Smalley Maintenance Services, Inc.,435 So.2d 705, 708 (Ala. 1983), and Johnson v. Corporate SpecialServices, Inc., 602 So.2d 385, 387 (Ala. 1992), this Court referred to the following four distinct wrongs as constituting the tort of invasion of privacy:
 "(1) the intrusion upon the plaintiff's physical solitude or seclusion;
 "(2) publicity which violates the ordinary decencies;
 "(3) putting the plaintiff in a false, but not necessarily defamatory, position in the public eye; and
 "(4) the appropriation of some element of the plaintiff's personality for a commercial use."
Phillips, 435 So.2d at 708.
Roe contends that the distribution of this novel will intrude upon his children's privacy, citing all four of these wrongs. He contends that even though the children's names are not used in the novel, they are still identifiable by the events and by the use of their natural parents' real first names in the book. He argues that the fictionalized account of the murder of the children's mother, along with invented dialogue, imaginary incidents, and creative thoughts and feelings attributed to the children will disturb the serenity and privacy of their new lives.
 A. Intrusion Upon Physical Solitude and Seclusion and Publicity That Violates the Ordinary Decencies.
This Court has recognized that the tort of invasion of privacy occurs when one intrudes upon a plaintiff's physical solitude or *Page 828 
seclusion or wrongfully intrudes into private activities in a manner that would outrage, or cause mental suffering, shame, or humiliation to, a person of ordinary sensibilities.Johnson, 602 So.2d 385, 387. However, in McCaig v. TalladegaPublishing Co., 544 So.2d 875, 879 (Ala. 1989), this Court stated that the right to privacy does not prohibit the broadcast of a matter that is of legitimate public concern. Thus, like most courts, faced with the competing interests of the right to privacy and the right to freedom of speech, this Court has held that the right to freedom of speech transcends the right to privacy so long as the speech pertains to a matter of public concern. Smith v. Doss, 251 Ala. 250, 37 So.2d 118
(1948); see Peter Felcher and Edward Rubin, Privacy, Publicity,and the Portrayal of Real People by the Media, 88 Yale Law J. 1577 (1979).
In Smith v. Doss, the plaintiffs, the daughters of a man who had been missing, sued the defendant for damages, alleging the tort of invasion of privacy. The plaintiffs claimed that the defendant, a radio station owner, had invaded their right to privacy by broadcasting the events of the disappearance of their father. This Court summarized the right of privacy as
 " 'the right of a person to be free from unwarranted publicity' or 'the unwarranted appropriation or exploitation of one's personality, the publicizing of one's private affairs with which the public has no legitimate concern, or the wrongful intrusion into one's private activities in such manner as to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities.' "
251 Ala. at 252-53, 37 So.2d at 120 (quoting a legal encyclopedia).
After summarizing the right of privacy, the Court said that " '[f]requently, the public has an interest in an individual which transcends his right to be left alone' and 'since the whole is greater than its component parts, privacy rights must often yield to public interest.' " Smith v. Doss,251 Ala. at 253, 37 So.2d at 120. The Court held that the defendant had not violated the plaintiffs' right to privacy because he had only broadcast events of public concern that were already a part of the public record.
Further, in Campbell v. Seabury Press, 614 F.2d 395 (5th Cir. 1980), the plaintiff, a former sister-in-law of the defendant, sued the defendant author and his publisher for publishing in his autobiography facts relating to the plaintiff's marriage to the defendant's brother, who was a famous civil rights leader. Citing Smith v. Doss for the proposition that the privilege to publish or broadcast news or other matters of public concern applies to the invasion of privacy tort, the 5th Circuit held that the publication of the defendant's book did not intrude upon the plaintiff's privacy. It stated that because the marriage, as it impacted on the defendant author, was a matter of legitimate public interest (this was not disputed by the plaintiff), the author and publisher did not tortiously invade the plaintiff's privacy by including facts relating to the plaintiff's home life and her marriage with the author's brother.
Unlike the plaintiff in Campbell, Roe argues that the events summarized in Doe's novel are not of legitimate public concern. We disagree. Society's interest in the events surrounding this murder was recognized long before Doe wrote her novel. Like the events surrounding the disappearance and reappearance of the plaintiffs' father in Smith v. Doss, the events of this murder were also outlined in the media and detailed in the trial transcript, which is a matter of public record. Thus, we hold that the events are a matter of public interest, and as such can be published without improperly intruding into the children's seclusion and without intruding into the children's private activities in an manner that will outrage a person of ordinary decencies.
 B. Putting the Plaintiff in a False, But Not Necessarily Defamatory, Position in the Public Eye.
Roe also argues that the novel contains false and misleading statements that place his children in a false light. He maintains that in this novel Doe portrays the children as unknowingly spending several days and nights living in their home in close proximity to their mother's dismembered body. Roe further asserts that in the novel *Page 829 
Doe attributes to the oldest child a hatred for the natural mother. He states that his daughter never felt this way about her mother. Roe argues that the false narration of events, along with the erroneous portrayal of his daughter, places his children in a false light.
In Bell v. Birmingham Broadcasting Co., 266 Ala. 266,96 So.2d 263 (1957), this Court held that the mere fact that a person is a public character or a legitimate subject of news comment does not justify misleading publicity or misrepresentation. However, where a fictitious work, using the names or attributes of real people, is clearly presented as fiction, this Court like other courts, must extend to it the constitutionally guaranteed freedom of speech.
In Leopold v. Levin, 45 Ill.2d 434, 259 N.E.2d 250 (1970), the plaintiff sued the author, publishers, and distributors of a novel and play for "false light" invasion of privacy. The plaintiff asserted that the novel and play, which narrated the events of a kidnapping and murder that he and another man had committed, placed him a false light. The Illinois Supreme Court held that there was no "false light" invasion of privacy because the novel and play were characterized as fictional, dramatized materials and were not represented to be otherwise. Similarly, there is no "false light" invasion of privacy in this case because Doe properly represents her book to be a novel, a fictionalized work, and nothing more.
In Hicks v. Casablanca Records, 464 F. Supp. 426 (S.D.N Y 1978), the heirs and assignees of mystery writer Agatha Christie sued to enjoin movie producers and a book publisher from distributing a motion picture and a book presenting a fictionalized account of an incident in the writer's life. The district court ruled that there was no "false light" invasion of privacy, because the reader of the novel would know that the work was fictitious by the presence of the word "novel." There is no "false light" invasion of privacy in this case, because the work is presented as a "novel"; it is intentionally and properly characterized as a work of fiction.
Roe also asserts that if the book were truly a book of fiction, then the disclaimer "The events and characters in this book are fictional; any similarity to persons living or dead is purely coincidental" would apply and should be provided with the book. We disagree. Oxford English Dictionary, Vol. VII, p. 241, Clarendon Press (1961), defines "novel" as "[a] fictitious prose narrative or tale of considerable length . . . in which characters and actions representative of the real life of past or present times are portrayed in a plot of more or less complexity." This book is clearly classified and represented as a novel, which the general public understands to be a fictitious work representative of real life. Thus, we do not find that a disclaimer is needed.
 C. The Appropriation of Some Element of the Plaintiff's Personality for a Commercial Use.
Last, Roe contends that the distribution of the novel will invade his children's right to privacy by appropriating a tragic event in their lives for commercial gain. InUniversity of Notre Dame du Lac v. Twentieth Century-Fox FilmCorp., 44 Misc.2d 808, 255 N.Y.S.2d 210 (N.Y. Sup. Ct. 1964),rev'd, 22 A.D.2d 452, 256 N.Y.S.2d 301, aff'd, 15 N.Y.2d 940,207 N.E.2d 508, 259 N.Y.S.2d 832 (1965), the lower court concluded that distributors of a play and a motion picture about Notre Dame University and its president had misappropriated the names of the school and its president. This opinion was based on the court's view that the play and movie lacked cultural worth. Reversing the lower court's holding, the Appellate Division held that the distribution of the play and motion picture did not constitute misappropriation, because each of the two works was a "significant medium for the communication of ideas." 22 A.D.2d at 457, 256 N.Y.S.2d at 306. Likewise, Doe's novel possesses social worth and is a significant medium for the communication of her ideas about an event in which society has an interest. Thus, Doe has not misappropriated the personalities of the children.
 IV. Conclusion
The court erred in enjoining the distribution of defendant Doe's novel. Doe's freedom *Page 830 
of speech is guaranteed by Article I, § 4, of the Alabama Constitution. Although she may not exercise that right in a manner that will injure the children's right to privacy, we do not find that the distribution of this novel, based on events of public interest, will violate that right of the children. Moreover, because this novel is based on events already in the public records, we deny Roe's motion to seal the record in this appeal. Accordingly, the judgment is reversed and the cause is remanded for an order or action consistent with this opinion.
MOTION TO SEAL RECORD DENIED; REVERSED AND REMANDED.
HORNSBY, C.J., and SHORES, STEAGALL, INGRAM and COOK, JJ., concur.