Kimberly KYSER–SMITH, Plaintiff,

v.

UPSCALE COMMUNICATIONS, INC., Bovanti Communication, Inc., Sally Beauty Company, Inc., Defendants.

Civ. A. No. 94–D–58–N.

United States District Court,
M.D. Alabama,
Northern Division.

Jan. 17, 1995.

Terry G. Davis, Amardo Wesley Pitters, Montgomery, AL, for plaintiff.

Donald Ellis, Decatur, GA, for Upscale and Bovanti.

Henry Clay Barnett, Jr., William Rufus King, Montgomery, AL, for Sally Beauty Co.

## MEMORANDUM OPINION AND ORDER

De MENT, District Judge.

This matter is before the court on defendants Upscale Communications, Inc. and Bovanti Communications, Inc.'s motions for summary judgment accompanied by supporting briefs, exhibits and affidavits. The defendants filed their individual motions on July 25, 1994. Defendants Upscale Communications, Inc. and Bovanti Communications, Inc. filed supplemental briefs on August 15, 1994 and August 24, 1994, respectively. Plaintiff Kimberly Kyser–Smith responded in opposition to each motion on August 24, 1994.

Because the defendants' motions involve similar issues and arise from the same set of facts, the court will consolidate the motions and address them simultaneously. After careful consideration of the arguments of counsel, the relevant case law and the record as a whole, the court issues the following opinion.

### JURISDICTION

This court has jurisdiction over this action pursuant to 28 U.S.C. § 1441 (removal jurisdiction) and 28 U.S.C. § 1332 (diversity jurisdiction). Diversity jurisdiction is proper because complete diversity exists between the parties and the amount in controversy exceeds $50,000, exclusive of interest and costs. Personal jurisdiction and venue are uncontested.

### SUMMARY JUDGMENT STANDARD

On a motion for summary judgment, the court is to construe the evidence and factual inferences arising from it in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The Supreme Court has stated:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a

showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

In further elaboration on the summary judgment standard, the court has said that "there is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (citations omitted). Summary judgment is not proper "if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248, 106 S.Ct. at 2510. *See Barfield v. Brierton*, 883 F.2d 923, 933 (11th Cir.1989).

### PARTIES

1) Plaintiff Kimberly Kyser–Smith is citizen of Montgomery, Ala.

2) Defendant Upscale Communications, Inc. is a Georgia corporation with its principal place of business in Atlanta, Ga.

3) Defendant Bovanti Communications, Inc. is a Georgia corporation with its principal place of business in Atlanta, Ga.

### FINDINGS OF FACT

Viewed in a light most favorable to the plaintiff, the court finds the following facts to be relevant and controlling as to the plaintiff's claims against Bovanti Communications, Inc. ("Bovanti") and Upscale Communications, Inc. ("Upscale"):

Plaintiff Kimberly Kyser–Smith ("plaintiff") filed this diversity action on December 10, 1993, alleging breach of contract (Count

I), the tort of invasion of privacy (Counts II and III), the equitable theory of unjust enrichment (Count IV), and fraud and deceit (Count V). The facts surrounding this lawsuit arise from the plaintiff's pursuit of a professional modeling career.

The plaintiff's action against Bovanti and Upscale derives from facts underlying two alleged contracts. The contracts at issue were allegedly entered into on or about November 7, 1990 ("1990 contract") and on or about July 28, 1991 ("1991 contract").

As to the plaintiff's breach of contract claims against Bovanti, the parties do not challenge the material terms of the contracts. Rather, the parties are in dispute as to *with whom* the plaintiff entered into a contract. Specifically, the plaintiff claims that she entered into both contracts with Bovanti, through its agent Michael Bohannon. Bovanti, on the other hand, claims that the two contracts were in fact between her and Bohannon Modeling Agency, a division of Bohannon Enterprises, Inc. The president and chief executive officer of both Bovanti and Bohannon Enterprises, Inc. is Michael Bohannon. At all relevant times to this action, the plaintiff communicated and worked with Michael Bohannon.[1]

As to the 1990 contract, the plaintiff seeks relief only from Bovanti based upon breach of contract or, in the alternative, the theory of unjust enrichment. The plaintiff claims that after her free "photography shoot," discussed *supra* footnote 1, she paid Bovanti $325 for a second photography session in Atlanta, Ga., whereby Bovanti allegedly was to provide her 500 composite sheets, in addition to various color and black-and-white prints. The plaintiff claims that despite continual telephone calls and trips to Atlanta, Bovanti, through its agents Michael Bohannon and Anita Bohannon, never gave her the composite sheets as promised.[2]

As to the 1991 contract, the plaintiff claims relief from both Bovanti and Upscale. The plaintiff states that Michael Bohannon asked her to participate in an audition in Atlanta, Ga., wherein participants would be selected to appear in publications that advertise Bronner Brothers, Inc.'s ethnic hair care and beauty products. Bronner Brothers, Inc. is an affiliate of Upscale. Approximately thirty days before the audition, Nathaniel Bronner, Jr., who works for both Bronner Brothers, Inc. and Upscale, interviewed fifteen to thirty potential models, including the plaintiff. In his affidavit, Nathaniel Bronner, Jr. states that he remembers the plaintiff because he thought she "would be very photogenic." Nathaniel Bronner, Jr.'s Aff. at 1.

Subsequently, the plaintiff received a letter from Bohannon Modeling Agency. The letter stated that the agency had selected her to participate in the audition. In pertinent part, the letter states:

1. All models must be registered and contracted by Bohannon Modeling Agency.

. . . .

4. The actual Photo Session is scheduled for Sunday, July 28, 1991 at Bohannon Modeling Agency. . . .

5. Compensation has been discussed with you by Bohannon Modeling Agency. . . .

Subsequently, the plaintiff received by mail a release form, which she was to sign

---

1. The plaintiff's working relationship with Michael Bohannon began prior to the two contracts at issue in this action. In September 1990, the plaintiff participated in a model search in Montgomery, Ala. At the conclusion of the model search, Michael Bohannon approached the plaintiff and expressed his desire to work with her. He offered her a free "photography shoot" in Atlanta to see how well she photographed one-on-one with the camera. She accepted the offer.

The court notes that the plaintiff claims that Bovanti Communications, Inc. coordinated, sponsored and advertised the model search. The evidence, however, clearly reveals that Bohannon Enterprises, Inc. produced the model search. The plaintiff's confusion may have ensued from the fact that winners of the model search would appear in *Bovanti, A Fashion Magazine,* which is published by Bohannon Enterprises, Inc.

Approximately one year after the model search, the plaintiff and several other models traveled with the Michael Bohannon to the Bahamas. According to the plaintiff, the purpose of the trip was to create a swimsuit magazine. The trip was one of the prizes awarded in conjunction with September 1990 model search.

2. After the initiation of this lawsuit, Michael Bohannon apparently gave the plaintiff the photographs.

and return by mail. The release agreement provides in pertinent part:

> In consideration of the agreed upon compensation, including 15% agency fee, I hereby grant an unconditional release to Bohannon Agency/Bronner Bros./Upscale Mag. (hereinafter, the "Company") for all photography, film and/or tape recordings made of me and used by the company, its subsidiaries or divisions in its advertising media programs related to print, posters, billboards, etc. Such release is granted without reservation for the compensation stated herein.

> I irrevocably consent to and authorize the unlimited use and reproduction by you, or anyone authorized by you, of any photography, film and/or recordings which you have taken of me for "Company."

It is undisputed that the plaintiff did not sign the release form. The plaintiff alleges that when she arrived at the audition without the signed release, no one told her that she could not participate. The plaintiff contends that the only representation made to her was that if she were selected, she would be notified and compensated. Subsequently, the plaintiff's photograph, which was taken at the "print Photo session," appeared in *Upscale* magazine, allegedly without her consent. *Upscale* magazine is published monthly by the defendant Upscale.

The plaintiff alleges that the advertisement, which appeared in two issues[3] of *Upscale* magazine, contains "strong sexual overtones" and interjects the "subliminal message" of "Hot Sex." The full-page, color advertisement promotes one of Bronner Brothers, Inc.'s products called "HOT SIX OIL." The advertisement contains a photograph of the plaintiff in a low-cut red-sequin dress: The words, "HOT SIX OIL," are printed in all capital letters across the top. The actual bottled product, which is clearly labelled "HOT SIX OIL," also is pictured in the advertisement. In addition, a caption in the lower left-hand corner lists the six different oils included in the product, hence, the name "Hot Six Oil."

As to both advertisements, the plaintiff alleges the following: that she did not consent to or authorize the use of her photograph in the advertisement; that she was not compensated for the use of her photograph as promised; that she was never notified that her photograph had been selected; and that she never saw or approved the advertisement before publication.

## DISCUSSION

### I. Bovanti Communications, Inc.

#### A. *Real Party in Interest*

Under Fed.R.Civ.P. 17(a) "[e]very action shall be prosecuted in the name of the real party in interest." The caption of the plaintiff's complaint names Bovanti Communications, Inc. as a party defendant. The dispositive issue before the court is whether Bovanti is a properly-named defendant, since it did not obtain corporate status until after the events giving rise to the plaintiff's claims.

#### B. *Analysis*

Bovanti asserts that Bohannon Modeling Agency is the real party in interest. Bovanti states that it could not have entered into either the 1990 or 1991 contract with the plaintiff because it was not incorporated until 1992, "well after the incidents alleged in this pending litigation."[4] Def. Bovanti's Mot. Summ.J., Ex. 3 attached thereto. In support thereof, Bovanti has offered as evidence a copy of the "Name Reservation Certificate" and "Certificate of Incorporation" issued by the secretary of state of Georgia on September 10, 1992, and October 5, 1992, respectively.[5] *See* Def. Bovanti's Mot.Summ.J., Ex. 2;

---

**3.** The plaintiff states that the advertisement at issue was published in both the April 1993 and October 1993 issues.

**4.** The court notes that based on the theories of adoption and ratification, a Georgia corporation can be held liable for contracts entered into prior to incorporation. Moreover, under some circumstances, parties will be estopped from deny-

ing the organization's corporate status, despite the absence of de jure status. The plaintiff, however, has not raised these theories, and the record does not infer that these are possible bases for recovery.

**5.** In order to form a de jure corporation in Georgia, the incorporator(s) must comply with all applicable statutory requirements. Specifi-

*see also,* Bovanti's Answer, Ex. 1. Moreover, Michael Bohannon states in his affidavit that Bovanti has neither entered into a verbal or written contract with the plaintiff nor has Bovanti been assigned the rights of any contracts of which the plaintiff is privy.

The plaintiff, on the other hand, argues that Bovanti existed prior to its date of incorporation and existed alongside Bohannon Enterprises, Inc. In fact, she asserts that Bohannon Modeling Agency and Bovanti are "one and the same." In support thereof, she asserts that she signed a form, not related to this action, releasing her pictures to "Bohannon–Bovanti."

■ However, accurate the plaintiff's assertions may be, the fallacy of her argument is that she sued *Bovanti Communications, Inc.,* a corporation that was non-existent when the alleged contracts were executed. Moreover, as to the 1991 contract, the terms of the letter informing plaintiff that she was a selected participant reveal that Bohannon Modeling Agency, not Bovanti, was the party to the contract. That letter unequivocally states that all contracts would be between the selected models and Bohannon Modeling Agency. Hence, the court finds that Bovanti is not a proper party to the lawsuit.

■ Moreover, because Bovanti was not a duly formed corporation at the execution of the 1990 and 1991 contracts, the plaintiff has failed to establish the essential elements for the formation of a contract. *See McDonough Constr. Co. v. Tutt,* 209 F.Supp. 45 (S.D.Ala. 1962), discussed *infra.* Accordingly, summary judgment is due to be granted in favor of Bovanti as to all the plaintiff's claims against it.

## II. Upscale Communications, Inc.

### A. *Breach of Contract*

#### 1. *Choice of Law*

■ At the outset, the court notes that *Erie Railroad v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), mandates

that in diversity actions, federal courts must apply the substantive law of the state in which they sit. Hence, the court must apply Alabama contract law. In breach of contract actions, the law of the state in which the contract was *executed* determines the rights and liabilities of the parties. *See Harrison v. Insurance Co. of North America,* 294 Ala. 387, 318 So.2d 253 (1975) (emphasis added). Here, it is not sufficiently clear from the facts presented whether the 1991 contract was executed in Alabama or Georgia. While the actual event underlying the 1991 contract dispute, i.e., the "photo Print session," occurred in Georgia, much of the correspondence between the plaintiff and the modeling agency was by telephone and through the United States mail. Because neither party has raised the issue and both cite Alabama contract law, the court will presume for summary judgment purposes that both contracts were executed in Alabama. The court notes that its findings would be the same even if Georgia contract law were controlling in this action.

#### 2. *Alabama Contract Law*

■ A contract is an agreement between two or more persons whereby in consideration of something done or promised to be done by a party on one side, the other undertakes to do or not to do a particular thing. *Wheeler v. Glasgow,* 97 Ala. 700, 11 So. 758 (1892). The essential elements of a contract are: " '(1) Parties competent to contract. (2) A subject matter. (3) Legal consideration. (4) Mutuality of agreement. And (5) mutuality of obligation.' " *McDonough Constr. Co.,* 209 F.Supp. at 48, *citing* 13 C.J. *Contracts,* § 1 at 237–38.

#### 3. *Analysis*

■ The court finds, as stated *supra,* that Bohannon Modeling Agency, a division of Bohannon Enterprises, Inc., is the proper party and only party to the 1991 contract. The paperwork provided by the parties unambiguously reveals that the "mutuality of

cally, the incorporator(s) must sign and file the articles of corporation with the secretary of state. Ga.Code Ann. § 14–2–120. The articles must include a name for the corporation approved by

the secretary of state. The secretary of state's filing of the articles is conclusive proof that all the conditions precedent to incorporation have been satisfied. Ga.Code Ann. § 14–5–4.

agreement" was between Bohannon Modeling Agency and the plaintiff, not Upscale. Because the plaintiff has failed to establish the existence of a valid contract between her and Upscale, summary judgment is due to be granted in Upscale's favor as to the plaintiff's breach of contract claim.

### B. *Unjust Enrichment*

■ The plaintiff also claims unjust enrichment as a basis of liability and, thus, seeks restitution from Upscale. The Supreme Court of Alabama has established that to succeed on a claim of unjust enrichment, the plaintiff must demonstrate that he or she "had a reasonable expectation that there would be compensation for services." *Utah Foam Products, Inc. v. Polytec Inc.*, 584 So.2d 1345 (Ala.1991) (citations omitted). In addition, "the law implies a promise to pay for services rendered when they are knowingly accepted and there is an expectation of payment for those services." It is equally well established that there can be no recovery for services gratuitously rendered and where there is no expectation of payment. *Id.* (citations omitted).

The plaintiff claims that Upscale has been unjustly enriched because it received economic benefits from the unauthorized publication of her photograph in two issues of its magazine. Here, the facts clearly reflect that the plaintiff was not expecting payment from Upscale. Rather, she expected compensation from the modeling agency. The letter received by the plaintiff from Bohannon Modeling Agency clearly stated that "compensation has been discussed with you by Bohannon Modeling Agency." Because the plaintiff has failed to establish an essential element of her claim, the court finds that summary judgment is due to be granted in favor of Upscale as to the plaintiff's unjust enrichment claim. Because the court finds that Upscale does not owe restitution to the plaintiff, the court need not address Upscale's equitable defense of unclean hands.

### C. *Invasion of Privacy*

The plaintiff also is suing Upscale for damages arising from the tort of invasion of privacy. Alabama courts recognize the tort of invasion of privacy and have adopted the position of the *Restatement (Second) of Torts* § 652 (1977). The Supreme Court of Alabama, in an opinion written upon certification from the Court of Appeals for the Eleventh Circuit, held that this tort includes four separate "wrongs": "1) the intrusion upon the plaintiff's physical solitude or seclusion; 2) publicity which violates the ordinary decencies; 3) putting the plaintiff in a false, but not necessarily defamatory, position in the public eye; and 4) the appropriation of some element of the plaintiff's personality for a commercial use." *Phillips v. Smalley Maintenance Serv.*, 435 So.2d 705, 708 (Ala.1983) (citations omitted).

■ Hence, the tort of invasion of privacy may arise when there is either a "public and commercial use or publication" or when there is a "wrongful intrusion into one's private activities or solitude or seclusion." *Johnson v. Corporate Special Serv., Inc.*, 602 So.2d 385, 387 (Ala.1992). In this case, the plaintiff brings her invasion of privacy claim under the prongs of false light and misappropriation for commercial use. *See* Order on Pretrial Hr'g.

### 1. *Misappropriation for Commercial Use*

■ Under the commercial misappropriation theory of the tort of invasion of privacy, liability attaches "... when one's name or likeness is 'appropriated by another to the other's use or benefit.'" *Schifano v. Greene County Greyhound Park, Inc.*, 624 So.2d 178, 181 (Ala.1993), *citing Restatement (Second) of Torts*, § 652C. The interest protected by this rule is the right of an individual "... in the exclusive use of his [or her] own identity, in so far as it is represented by his [or her] name or likeness, and in so far as the use may be of a benefit to him [or her]." *Restatement (Second) Torts*, § 652C, comment a. Furthermore, this right is invaded when one appropriates and uses the "... plaintiff's name or likeness to advertise the defendant's business or product, or for some similar commercial purpose." Thus,

[n]o one has the right to object merely because his name or his appearance is brought before the public, since neither is in any way a private matter and both are

open to public observation. It is only when the publicity is given for the purpose of appropriating to the defendant's benefit the commercial or other values associated with the name or the likeness that the right of privacy is invaded.

*Id., citing Restatement (Second) of Torts,* § 652C, comment d.

In support of its motion, Upscale cites *Schifano* as controlling authority. In *Schifano,* the plaintiffs were patrons of a greyhound racing park and sued the park for invasion of privacy when their photograph appeared in the dog track's advertising brochure. As to the commercial misappropriation theory, the Supreme Court of Alabama affirmed the trial court's entry of summary judgment in favor of the defendant. The court held that because there was "no unique quality or value" in the plaintiffs' "... likenesses that would result in commercial profit to the Park simply from using a photograph that included them—unidentified and seated in a group." *Id.* at 180.

The court finds that *Schifano* is inapplicable to the case sub judice. In *Schifano* the plaintiffs attended the dog race and sat in the public seating area. By happenchance, they sat in an area where a photograph for an advertisement was to be taken. There was nothing unique about their "look" that caused them to be in the picture. Moreover, the park even made an announcement letting the patrons know of the photograph, so they could move if they objected. Plaintiffs admitted that they heard the announcement and decided not to move.

Here, however, the plaintiff, who has been pursuing a professional modeling career since 1985, participated in a modeling photography session presumably seeking exposure. Like all the other contestants, she hoped that the modeling agency would find some unique quality about her and select her as the "face" to represent Bronner Brothers Inc.'s products. Indeed her photograph was selected. If either Upscale or its affiliate Bronner Brothers, Inc., who were active participants in the selection process, had thought that her "image" would not · sell Bronner Brothers, Inc.'s products, she obviously would not have been selected. Here,

unlike the patrons at the park, the defendant specifically chose the plaintiff, thereby rejecting many others.

In addition to publishing the plaintiff's photograph without her consent, the plaintiff must prove that Upscale received a commercial benefit from the publication. The court finds that *Cabaniss v. Hipsley,* 114 Ga.App. 367, 151 S.E.2d 496 (1966), is instructive. There, the Court of Appeals of Georgia addressed the issue of liability of publishers of advertisements in a commercial misappropriation context. In that case, the court held that the plaintiff, an exotic dancer, could recover from the owner of the Atlanta Playboy Club for the unauthorized use of the ·dancer's photograph in an Atlanta entertainment magazine. However, the court indicated that the evidence could not support a verdict against the publishing magazine:

> His participation was merely passive and his magazine Gay Atlanta was merely the conduit through which the advertising and publicity matter of customers was transmitted by Playboy Club to the public. The appropriation of the plaintiff's photograph did not inure to his benefit, use or advantage, · but to that of his advertiser. A different question might be presented had the evidence shown that Cabaniss used the advertisement of the Atlanta Playboy Club, with its photograph of the plaintiff, to publicize or advertise his magazine. The evidence did not show however, that any advantage accrued to Cabaniss by any means.

*Id.,* 151 S.E.2d at 506.

■ The court agrees with reasoning in *Cabaniss* and finds that the instant facts fall within the *Cabaniss* exception to publisher liability. *Upscale* magazine is published by Upscale, which is an affiliate of Bronner Brothers, Inc. The publisher, Upscale, used plaintiff's photograph to publicize its affiliate's products. Clearly, Upscale has an economic interest in the profitability of its affiliate, Bronner Brothers, Inc., and any money received by Bronner Brothers, Inc. would necessarily inure to the benefit of Upscale. Thus, the court finds that the evidence, viewed in a light most favorable to the plaintiff, suggests that a reasonable juror could

find that Upscale published the plaintiff's photograph in its advertising brochure for its own commercial advantage. Accordingly, Upscale's motion for summary judgment as to the invasion of privacy theory of misappropriation for commercial use is due to be denied.

### 2. *False Light*

The plaintiff also alleges that Upscale, by publishing the photograph and caption, invaded her privacy by portraying her before the public in a false light and in a manner offensive to a reasonable person. *See Restatement (Second) of Torts*, § 652E. The plaintiff argues that the use of her photograph in the advertisement insinuates that she is promiscuous.

The threshold inquiry of whether a reasonable jury could view the advertisement as portraying the plaintiff in a false light is for the court to decide. *Faloona by Fredrickson v. Hustler Mag., Inc.*, 799 F.2d 1000, 1006 (5th Cir.1986). Furthermore, "[a]ny uncertainty in this step should be resolved in favor of the plaintiff." *Id.*

There are two necessary elements for recovery under this theory: First, the false light complained of must be "highly offensive to a reasonable person." Second, the defendant must have acted knowingly or in "reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed." *Schifano*, 624 So.2d at 180, *citing Restatement (Second) of Torts*, § 652E.

The court finds that the plaintiff has satisfied the first element. In viewing the evidence in a light most favorable to the plaintiff, the court finds that a question of fact exists as to whether the advertisement is highly offensive to a reasonable person. Even though risque and provocative advertisements are abundant in today's society, a jury could find that the photograph of an attractive young woman in a red-sequin, low-cut dress advertising a product with the name "HOT SIX OIL" in large capital letters strewn across the top to be highly offensive to a reasonable person. The court's finding is bolstered by the fact that the plaintiff

never saw the advertisement before publication and never signed a release agreement authorizing the unlimited use of her photograph.

Rebutting plaintiff's contention that she, or a reasonable person would be highly offended, Upscale puts forth an excerpt from the plaintiff's deposition where the plaintiff states, "I'm not upset with the picture." The court finds that it may be reasonably be inferred that the plaintiff did like the picture but finds the *use* of her picture in the advertisement offensive.

The court further finds that there is a question of fact as to whether the publication was made with knowledge of or in reckless disregard of its falsity, thus, precluding the granting of summary judgment. In *Wood v. Hustler Mag., Inc.*, 736 F.2d 1084, 1088–90 (5th Cir.1984), the defendant magazine published a nude photograph of the plaintiff that had been stolen and submitted with a forged consent. The plaintiff sued for false light invasion of privacy. The trial court found the defendant liable for publishing in reckless disregard of the falsity of the material because it had carelessly followed its limited procedure for verifying the plaintiff's consent.

Here also, recklessness in the publication of the advertisement may be inferred from the fact that the plaintiff did not sign the release form authorizing the publication or use of the photographs for any lawful purpose without restriction. The release form expressly provides that the model's signature grants Bohannon Modeling Agency, Bronner Brothers, Inc. and *Upscale* magazine the unconditional right to use the photographs for any lawful purpose. Significantly, Nathaniel Bronner, Jr., who works for both Upscale and Bronner Brothers, Inc., was inextricably involved with and participated in the selection of the models. It is necessarily follows that Nathaniel Bronner, Jr., an agent of Upscale, should have had verified that all conditions precedent to publication, i.e., a signed release form, were met. Accordingly, the court finds that summary judgment is due to be denied as to the plaintiff's claim of false light invasion of privacy.

The court emphasizes that its findings that Upscale is not entitled to summary judgment as to the plaintiff's invasion of privacy claims should not be read to imply that Upscale necessarily should be held liable. Rather, the court's conclusion is merely that the evidence, when taken in the light most favorable to the plaintiff, survives Upscale's motion for summary judgment. Upscale later may produce evidence tending to contradict and rebut the plaintiff's allegations, thus precluding recovery.

### D. *Fraud and Deceit*

The plaintiff also seeks recovery for fraud and deceit against Upscale. Upscale has failed to address these claims in its motion for summary judgment. Accordingly, Upscale's motion for summary judgment as to Count V (fraud and deceit) of the complaint is due to be denied.

### CONCLUSION

For the foregoing reasons, it is CONSIDERED and ORDERED that summary judgment be and the same is hereby GRANTED in favor of Bovanti Communications, Inc. and against the plaintiff Kimberly Kyser–Smith, and that the plaintiff take nothing by her said suit against defendant Bovanti Communications, Inc.

It is further CONSIDERED and ORDERED that all costs herein incurred by defendant Bovanti Communications, Inc. be and the same are hereby taxed against the plaintiff, for which let execution issue.

It is further CONSIDERED and ORDERED that defendant Upscale Communications, Inc.'s motion for summary judgment be and same is hereby GRANTED as to Count I (breach of contract) and Count IV (unjust enrichment) of the plaintiff's complaint.

It is further CONSIDERED and ORDERED that defendant Upscale Communications, Inc.'s motion for summary judgment be and the same is hereby DENIED as to Counts II and III (invasion of privacy) and Count V (fraud and deceit) of the plaintiff's complaint.

DONE.