[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 820 
The plaintiff, Wendy Minnifield, appeals from a summary judgment entered in favor of the defendants, Greg Ashcraft and Skin Worx, Inc. This case was transferred to this court by the supreme court, pursuant to § 12-2-7(6), Ala. Code 1975.
On February 1, 2002, Minnifield sued Ashcraft and Skin Worx, Inc., alleging invasion of privacy arising out of photographs of a tattoo on Minnifield's upper right breast that Ashcraft submitted, without Minnifield's permission, to "Dark Skin Art," a national tattoo magazine.[1] Minnifield alleged that the publication of the photographs embarrassed, degraded, and demeaned her, causing her mental anguish and emotional distress. Ashcraft and Skin Worx moved for a summary judgment, arguing that Minnifield was not entitled to damages under the tort of defamation as a result of the publication of the photographs and that she had signed a general release form releasing Ashcraft and Skin Worx from any liability.[2] The trial court entered a summary judgment in favor of Ashcraft and Skin Worx. Minnifield appeals.
An appellate court reviews a summary judgment by the same standard the trial court uses in determining whether to grant a summary-judgment motion. Pryor v. Brown Root USA, Inc.,674 So.2d 45, 47 (Ala. 1995); Bussey v. John Deere Co.,531 So.2d 860, 862 (Ala. 1988). A summary judgment is appropriate if there is no genuine issue of material fact and the movant is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P. The movant has the burden of making a prima facie showing that there is no genuine issue of material fact and that he or she is entitled to a judgment as a matter of law. Bass v. SouthTrustBank of Baldwin County, 538 So.2d 794, 797-98 (Ala. 1989). If the moving party makes that prima facie showing, then the burden shifts to the nonmoving party, who then has the burden of presenting substantial evidence creating a genuine issue of material fact. Id. In determining whether the evidence creates a genuine issue of material fact, this court must review the record in the light most *Page 821 
favorable to the nonmovant and must resolve all reasonable doubts against the movant. Wayne J. Griffin Elec., Inc. v. Dunn Constr.Co., 622 So.2d 314 (Ala. 1993). Evidence is "substantial" if it is of "such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders LifeAssurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989).
Viewing the evidence in a light most favorable to Minnifield, as we are required to do, the evidence indicates that after Ashcraft completed Minnifield's tattoo he asked her if he could photograph the tattoo for his portfolio. One photograph showed Minnifield pointing at her tattoo. Minnifield's face is clearly identifiable in the photograph. The other photograph was a close-up of the tattoo. According to Minnifield, Ashcraft told her that the photographs would stay in his office. Minnifield believed that Ashcraft would not show the photographs to anyone else.
Minnifield testified that her cousin's roommate saw the photographs in the magazine and recognized Minnifield. Minnifield also testified that she was approached by a stranger while she was swimming and her tattoo was exposed and that the man stated that he had seen her tattoo in a magazine. Minnifield stated that she believed that the publication of the photographs was degrading because, she said, the other photographs in the tattoo magazine were not tasteful and she felt like she was being stereotyped with the other people featured in the magazine.
Our supreme court has stated:
 "`It is generally accepted that invasion of privacy consists of four limited and distinct wrongs: (1) intruding into the plaintiff's physical solitude or seclusion; (2) giving publicity to private information about the plaintiff that violates ordinary decency; (3) putting the plaintiff in a false, but not necessarily defamatory, position in the public eye; or (4) appropriating some element of the plaintiff's personality for a commercial use.'"
Butler v. Town of Argo, 871 So.2d 1, 12 (Ala. 2003) (quotingJohnston v. Fuller, 706 So.2d 700, 701 (Ala. 1997)). Each of these categories of invasion of privacy (intrusion into seclusion, public disclosure of private information, putting a person in a false light, and appropriation of an element of a person's personality for commercial use) has distinct elements, and each category establishes a separate privacy interest that may be invaded. Regions Bank v. Plott, 897 So.2d 239 (Ala. 2004).
Johnson v. Corporate Special Services, Inc., 602 So.2d 385,387 (Ala. 1992), provides:
 "There are two standards the Court uses to find whether there has been a tort of invasion of privacy:
 "`1) If there has not been public or commercial use or publication, then the proper standard is whether there has been an "intrusion upon the plaintiff's physical solitude or seclusion," or a "wrongful intrusion into one's private activities in such manner so as to outrage or to cause mental suffering, shame or humiliation to a person of ordinary sensibilities"; and 2) if there has been public or commercial use or publication of private information, then the proper standard is whether there has been "unwarranted publicity," "unwarranted appropriation or exploitation of one's personality," publication of private affairs not within the legitimate concern of the public, an intrusion into one's "physical solitude or seclusion," the placing of one in a "false but not necessarily defamatory position in the public eye," or an "appropriation of some element of *Page 822 
[one's] personality for commercial use."'
 "Hogin [v. Cottingham,] 533 So.2d [525] at 530-31 [(Ala. 1988)](citations omitted). . . . . See also, Smith v. Doss, 251 Ala. 250, 37 So.2d 118 (1948)."
(Emphasis omitted.)
Of the four categories of invasion of privacy, Minnifield asserts a commercial-appropriation claim (i.e., that Ashcraft and Skin Worx used her likeness without her authorization to obtain some commercial benefit and that she was damaged as a result). Ashcraft and Skin Worx's appellate brief fails to discuss invasion of privacy and instead addresses defamation. However, Minnifield did not allege defamation in her complaint.[3]
With regard to commercial appropriation, our supreme court has stated:
 "Restatement (Second) of Torts, § 652C, states that liability for this wrong arises when one's name or likeness is `appropriated' by another to the other's `use or benefit.' Comment d to this section states, in part:
 "`No one has the right to object merely because his name or his appearance is brought before the public, since neither is in any way a private matter and both are open to public observation. It is only when the publicity is given for the purpose of appropriating to the defendant's benefit the commercial or other values associated with the name or the likeness that the right of privacy is invaded.'"
Schifano v. Greene County Greyhound Park, Inc., 624 So.2d 178,181 (Ala. 1993). In Schifano, patrons of a dog-racing park were photographed as they sat in a section of the park that can be reserved by interested groups. The park printed the photograph in an advertising brochure. The patrons in the photograph were not identified by name. The photograph was taken by a camera mounted on a tripod in full view of, and only a few feet from, the persons being photographed. The court held that there was no unique quality or value in the patrons' likenesses that would result in commercial profit to the park simply from using a photograph that included them — unidentified and seated in a group. The court noted that the patrons had failed to rebut the evidence indicating that the photograph was taken in full view of, and only a few feet away from, them and, therefore, that the patrons had failed to present a genuine issue of material fact regarding their consent.
There is a "legitimate public interest" exception to the right to privacy. In Smith v. Doss, 251 Ala. 250, 37 So.2d 118
(1948), the right to privacy was defined in part as "`the right of a person to be free from unwarranted publicity' or `the unwarranted appropriation or exploitation of one's personality, the publicizing of one's private affairs with which the public has no legitimate concern.'" 251 Ala. at 252-53, 37 So.2d at 120, quoting 41 Am.Jur. Privacy § 2 (1942). However, the Smith
court held that the broadcast of matters of "legitimate public interest" is not prohibited by the right to privacy because of the interest of the public in being informed. 251 Ala. at 253,37 So.2d at 121. In Doe v. Roe, 638 So.2d 826 (Ala. 1994), our supreme court recognized a legitimate-public-interest exception to a commercial appropriation. In Doe, the natural mother of the plaintiff's adopted children was murdered by their natural father. The nature of the murder and the subsequent trial, which was a matter of public record, received *Page 823 
much publicity. The plaintiff in Doe, the children's adoptive parent, brought an action seeking to enjoin distribution of a novel about the murder. Our supreme court determined that the novel possessed social worth and was a significant medium for the novelist to communicate her ideas about the murder, in which society had an interest.
In the present case, Minnifield is clearly identifiable in one of the photographs. When Ashcraft submitted the photographs of Minnifield to the magazine, the caption beside the photographs listed his name and Skin Worx. Certainly, it is reasonable to infer that Ashcraft and his business entity, Skin Worx, sought a commercial benefit from the photographs being published in the magazine. Ashcraft's submission of the photographs to the magazine for publication did not pertain to a legitimate newsworthy public interest. Therefore, the publication of the photographs is not protected under the legitimate-public-interest exception.
The damage that Minnifield claims flows from the publication of the photographs is a result of injuries to her feelings rather than from an injury to an economic interest in her property right in her likeness. The United States Court of Appeals for the Eleventh Circuit, applying Alabama law, has questioned the interest sought to be protected under our commercial-appropriation invasion-of-privacy tort and whether injuries to psychological interests are compensable under the commercial-appropriation category of invasion of privacy. SeeAllison v. Vintage Sports Plaques, 136 F.3d 1443 (11th Cir. 1998).
In Allison, the widow of a well-known race-car driver sued a retailer, alleging that the retailer's plaques featuring the driver's trading cards violated the driver's right to publicity under Alabama law. In discussing the right to publicity and the interest protected by the commercial-appropriation invasion-of-privacy tort, the Court of Appeals stated:
 "The commercial appropriation right of privacy is similar, but not identical, to the right of publicity recognized in a number of jurisdictions. Whereas judicial acceptance of the four distinct torts that comprise the general right of privacy is `universal,' J. Thomas McCarthy, The Rights of Publicity and Privacy § 1.5[E] (1997), the right of publicity
has been recognized in only sixteen states, id. at § 6.1[B]. One commentator has summarized the difference between the right of publicity and the commercial-appropriation prong of the right of privacy this way:
 "`The appropriation type of invasion of privacy, like all privacy rights, centers on damage to human dignity. Damages are usually measured by "mental distress" — some bruising of the human psyche. On the other hand, the right of publicity relates to commercial damage to the business value of human identity. Put simplistically, while infringement of the right of publicity looks to an injury to the pocketbook, an invasion of appropriation privacy looks to an injury to the psyche.'
 "J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 28:6 (1997); see Haelan Lab., Inc. v. Topps Chewing Gum, Inc., 202 F.2d 866, 868 (2d Cir. 1953) (`[M]any prominent persons (especially actors and ball-players), far from having their feelings bruised through public exposure of their likenesses, would feel sorely deprived if they no longer received money for authorizing advertisements, popularizing their countenances, displayed in newspapers, magazines, busses, trains, and subways.'). *Page 824 
 "Alabama has not denominated the interest protected by its commercial appropriation invasion of privacy tort as the right of publicity. See McCarthy, Rights of Privacy and Publicity at § 6.1[B] (noting that sixteen states judicially or statutorily have recognized the right of publicity, denominated as such, and that an additional nine states have statutes that cover most aspects of the right of publicity). We read Alabama's commercial appropriation privacy right, however, to represent the same interests and address the same harms as does the right of publicity as customarily defined. Indeed, the elements of Alabama's commercial appropriation invasion of privacy tort, which bases liability on commercial, rather than psychological, interests, cf. McCarthy, McCarthy on Trademarks and Unfair Competition § 28:6, do not differ significantly from those of the tort of violation of the right of publicity. Compare Kyser-Smith v. Upscale Communications, Inc., 873 F.Supp. 1519, 1525-27 (M.D.Ala. 1995) with Montana v. San Jose Mercury News, Inc., 34 Cal.App.4th 790, 793, 40 Cal.Rptr.2d 639, 640 (1995). As a technical matter, then, we construe appellants' claim as one sounding in commercial appropriation, rather than in publicity, although we conclude that the distinction is largely semantic.
 "Although the Alabama Supreme Court has addressed the tort of commercial appropriation only twice and thus has provided us with little guidance in determining the contours of the cause of action, we read Alabama law to permit a cause of action for invasion of privacy when the defendant appropriates without consent the `plaintiff's name or likeness to advertise the defendant's business or product, or for some other similar commercial purpose.' Kyser-Smith, 873 F.Supp. at 1525. The plaintiff must demonstrate that there is a `unique quality or value in [his] likeness' that, if appropriated, would result in `commercial profit' to the defendant. Schifano, 624 So.2d at 181; cf. Montana v. San Jose Mercury News, Inc., 34 Cal.App.4th 790, 793, 40 Cal.Rptr.2d 639, 640 (1995) (`A cause of action for common law misappropriation of a plaintiff's name or likeness may be pled by alleging: (1) the defendant's use of the plaintiff's identity; (2) the appropriation of plaintiff's name or likeness to defendant's advantage, commercially or otherwise; (3) lack of consent; and (4) resulting injury.') (internal quotation omitted)."
136 F.3d at 1446-47 (footnote omitted).
We cannot say that Alabama's commercial-appropriation invasion-of-privacy tort bases liability solely on commercial rather than psychological interests. First, Allison does not distinguish between a public figure, like the famous race-car driver involved in that case, and a private person. For a private person, psychological interests would likely be the main concern resulting from the appropriation of his or her likeness, even if only their family members or close friends were to recognize their likeness. Second, in Doe v. Roe, 638 So.2d at 827, the plaintiff brought an action to enjoin distribution of a novel about the murder of his adopted children's natural mother because "the fictionalized account of the murder of the children's mother, along with invented dialogue, imaginary incidents, and creative thoughts and feelings attributed to the children will disturb the serenity and privacy of their new lives." Clearly, psychological interests, not a commercial proprietary interest, were the underlying basis for the appropriation invasion-of-privacy claim asserted in Doe (i.e., the plaintiff in Doe was not arguing that the defendant had taken a valuable commercial property *Page 825 
right from the children without compensating them).
The right to publicity was first recognized as a separate interest than the interest protected by the commercial-appropriation invasion-of-privacy tort in HaelanLaboratories, Inc. v. Topps Chewing Gum, Inc., 202 F.2d 866 (2d Cir. 1953), and it was later discussed in Zacchini v.Scripps-Howard Broadcasting Co., 433 U.S. 562, 97 S.Ct. 2849,53 L.Ed.2d 965 (1977). Both the right to publicity and the right not to have one's privacy invaded by misappropriation of one's likeness protect an individual from unauthorized commercial use of their name and likeness. The Restatement (Third) of UnfairCompetition § 46 cmt. b (1995) recognized the types of damages claimed as the basis for the difference between the two torts; damages for commercial appropriation are intended to compensate for the personal harm to one's dignity and integrity while damages for a violation of the right to publicity address the economic interest in one's name or likeness. The Nevada Supreme Court has stated:
 "The distinction between these two torts is the interest each seeks to protect. The appropriation tort seeks to protect an individual's personal interest in privacy; the personal injury is measured in terms of the mental anguish that results from the appropriation of an ordinary individual's identity. The right to publicity seeks to protect the property interest that a celebrity has in his or her name; the injury is not to personal privacy, it is the economic loss a celebrity suffers when someone else interferes with the property interest that he or she has in his or her name. We consider it critical in deciding this case that recognition be given to the difference between the personal, injured-feelings quality involved in the appropriation privacy tort and the property, commercial value quality involved in the right of publicity tort."
People for the Ethical Treatment of Animals v. Bobby Berosini,Ltd., 111 Nev. 615, 636, 895 P.2d 1269, 1283 (1995). This is not to say that a celebrity's personal interests cannot serve as a basis for a commercial-appropriation claim or that a noncelebrity's economic interests cannot serve as a basis for recovery. See Parks v. LaFace Records, 329 F.3d 437 (6th Cir. 2003) (civil-rights pioneer, Rosa Parks, sued a rap group over their use of her name on its album, expressing her disapproval of the profanity, racial slurs, and derogatory remarks about women associated with a song on the album); Onassis v. ChristianDior-New York, Inc., 122 Misc.2d 603, 472 N.Y.S.2d 254
(N.Y.Sup.Ct. 1984) (former first lady Jacqueline Kennedy Onassis did not seek damages for lost economic profit for the use of a look-alike model in advertising a line of clothing but instead sought injunctive relief because she had never used her image in promoting a commercial product); see also Canessa v. J.I.Kislak, Inc., 97 N.J.Super. 327, 235 A.2d 62 (Law Div. 1967) (plaintiffs recovered for the defendant real-estate agent's unauthorized use of a photograph of the plaintiff's family in an advertisement); Ainsworth v. Century Supply Co.,295 Ill.App.3d 644, 693 N.E.2d 510, 230 Ill.Dec. 381 (1998) (although worker consented to videotaping of his work for an instructional video, the later use of his image in a television commercial resulted in an economic benefit to employer).
Alabama has not expressly recognized the right to publicity; however, we agree with the Allison court that BirminghamBroadcasting Co. v. Bell, 259 Ala. 656, 68 So.2d 314 (1953), indicates that the right to privacy in Alabama does protect the commercial value of a public figure's *Page 826 
identity. In Bell, the plaintiff was a former college football star and an experienced radio announcer whose recognizable name had been used by the defendant company in soliciting other stations to broadcast certain college football games announced by the plaintiff and in soliciting sponsors for those broadcasts. Our supreme court stated: "The privacy of a public personage may not be lawfully invaded by the use of his name or picture for commercial purposes without his consent, not incidental to an occurrence of legitimate news value." 259 Ala. at 662,68 So.2d at 319. Although the press may publish photographs of prominent public figures, "`it is a very different thing for a manufacturer to use without authority such a man's picture to advertise his goods.'" Id., quoting Foster-Milburn Co. v. Chinn,134 Ky. 424, 120 S.W. 364, 366 (1909). However, we cannot say that the commercial-appropriation invasion-of-privacy tort in Alabama bases its liability solely on commercial rather than psychological interests. To do so would, in effect, substitute the commercial-appropriation invasion-of-privacy tort with the tort of violating the right to publicity. Moreover, while the modern view recognizes the two torts as distinct, courts often do not treat them separately. See Alice M. Hunt, Everyone Wants ToBe A Star: Extensive Publicity Rights For Noncelebrities UndulyRestrict Commercial Speech, 95 NW. U.L.Rev. 1605 (2001).
Ashcraft and Skin Worx argue that Minnifield voluntarily signed an agreement releasing them from liability. Before Minnifield obtained her tattoo, she signed the following form:
 "I am at least 19 years old; I do not have a heart condition. I do not have epilepsy. I have not had hepatitis within the last year. I am not a hemophiliac (bleeder). I am not under the influence of drugs or alcohol. I have never been diagnosed with Aids.
 "To my knowledge, I do not have any physical, mental, or medical impairment or disability that might effect my well-being as a direct or indirect result of my decision to have any tattoo or piercing related work done at this time.
 "I agree to follow the instructions concerning the care of my tattoo or piercing while it is healing. I agree that any touch-up work needed, due to my own negligence, will be done at my own expense. I understand that is [sic] my skin color is dark, the colors will not appear as bright as they do on light skin.
 "Being of sound mind and body, I hereby release any and all persons representing Skin Worx tattooing (also known as Greg Ashcraft) from all responsibility. I expect [sic] any and all responsibility for any consequences that might stem from my decision to have any tattoo or piercing related work done by Skin Worx.
 "I agree not to sue Skin Worx in connection with any and all damages, claims, demands, rights and causes of action of whatever kind of [sic] nature, based upon injuries or property damage to or death of my-self or any other persons arising from my decision to have tattoo or piercing related work done at this time, whether or not caused by the negligence of Skin Worx personnel.
 "I agree for myself, my heirs, assigns, and legal representatives to hold Skin Worx harmless from all damages, actions, causes of actions, claim judgments, cost of litigation, attorney fees and all other costs and expenses which might arise from my decision to have any tattoo or piercing related work done by Skin Worx.
 "I agree to leave the premises of Skin Worx, or any other establishment where *Page 827 
Greg Ashcraft is engaged in business, promptly upon request, for any reason whatsoever, by any agent or employee of Skin Worx.
 "I agree that these waivers also pertain to and are designed to protect any and all establishments where Greg Ashcraft conducts business."
Section 12-21-109, Ala. Code 1975, provides: "All receipts, releases and discharges in writing, whether of a debt of record, a contract under seal or otherwise, and all judgments entered pursuant to pro tanto settlements, must have effect according to their terms and the intentions of the parties thereto."
Where no ambiguity exists, a court's only function is to interpret the meaning and intentions of the parties as found within the four corners of the document. Pruitt v. Circuit CityStores, Inc., 678 So.2d 1166 (Ala.Civ.App. 1996). Parol evidence will not be admissible to explain unequivocal terms.Jehle-Slauson Constr. Co. v. Hood-Rich Architects ConsultingEng'rs, 435 So.2d 716 (Ala. 1983).
In the present case, the language of the anticipatory release purporting to exempt Ashcraft and Skin Worx is ambiguous. We hold that reasonable minds could differ as to whether the anticipatory release discharged liability for the intentional tort of invasion of privacy. Although parties may execute an agreement that will release claims or damages not particularly contemplated, the parties' intent to do so must be clearly expressed in the agreement. Jehle-Slauson, supra.
Construing the release against Ashcraft and Skin Worx, the drafters of the release, Minnifield's commercial-appropriation invasion-of-privacy claim is not "based upon injuries or property damage to, or death arising from [Minnifield's] decision to have tattoo or piercing related work done." See Jehle-Slauson,435 So.2d 716 (holding that ambiguous releases must be construed against the party who wrote them). Instead, Minnifield's claim is based on Ashcraft's publication of photographs without her permission and not on her decision to obtain a tattoo. Moreover, our supreme court has indicated that releases purporting to discharge liability for intentional torts are against public policy. In Barnes v. Birmingham International Raceway, Inc.,551 So.2d 929 (Ala. 1989), our supreme court held that anticipatory release forms, although valid to discharge liability for negligent conduct, were invalid and contrary to public policy as to wanton or willful conduct. In Reece v. Finch,562 So.2d 195 (Ala. 1990), our supreme court applied the public-policy rationale set out in Barnes to prohibit an anticipatory release form from exculpating a person from liability as to prospective intentional torts.
Accordingly, the summary judgment entered in favor of the defendants, Ashcraft and Skin Worx, is reversed, and the cause is remanded for further proceedings.
REVERSED AND REMANDED.
THOMPSON, J., concurs in the result, without writing.
PITTMAN, J., concurs in the result, with writing, which CRAWLEY, J., joins.
MURDOCK, J., concurs in the result, with writing.
[1] It is unclear whether Skin Worx was incorporated when Minnifield obtained her tattoo in April 1999. Ashcraft testified in his deposition that Skin Worx was first incorporated in 1999 and that he was the sole shareholder. However, he did not testify as to what date in 1999 Skin Worx was incorporated. Ashcraft said that when he started the business in 1995 Skin Worx was unincorporated and operated as a sole proprietorship. None of the defendants' pleadings or motions refer to Skin Worx as being a corporation. Also, a release form, which was signed by Minnifield in April 1999, refers to the business entity as "Skin Worx tattooing (also known as Greg Ashcraft)."
[2] Minnifield did not allege defamation in her complaint.
[3] Although false-light invasion of privacy is sometimes compared to defamation, they are separate torts. See RegionsBank v. Plott, supra (recognizing distinctions between the two torts).